UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS JOVON RUTHERFORD, CDCR #BE-6676,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>S. STEADMAN, Warden;<br>P. WINGO, ISU Officer;<br>B. GOMEZ, C/O;<br>C. CHADRY,<br>C/O; ESPENO,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:24-cv-01627-JAH-JLB<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING CIVIL ACTION FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)**<br><br>**[ECF No. 2]** |

　　　Before the Court is a civil rights complaint filed by Plaintiff Nicholas Jovon Rutherford, a prisoner at Salinas Valley State Prison ("SVSP"), who is proceeding without counsel pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1, "Compl.") Plaintiff claims prison officials at Richard J. Donovan Correctional Facility ("RJD") in San Diego violated his constitutional rights while he was incarcerated there in October 2022. (*Id.* at 2–3.) Plaintiff has not paid the filing fee required by 28 U.S.C. § 1914(a) to commence a civil action, but instead seeks leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

1

For the reasons explained, the Court **GRANTS** Plaintiff leave to proceed IFP, but **DISMISSES** his Complaint sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) because it fails to state a claim upon which relief may be granted.

## I. MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for … the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113,

---

[1] In addition to the $350 statutory fee, civil litigants filing suit are required to pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The administrative portion does not apply to persons granted leave to proceed IFP. *Id.*

1119 (9th Cir. 2005).  Using this financial information, the court "shall assess and when funds exist, collect, … an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)).  Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments.  *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report, as well as notarized certificate of funds issued by a SVSP trust accounting department official which attests as to his trust account balance and deposits for the 6-months prior to filing.  (*See* ECF No. 2 at 7–13.)  *See also* 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119.  These documents show average monthly deposits of $128.55 and an average monthly balance of $157.08 in Plaintiff's account, but an available balance of only $.02 at the time of filing.  (*See* ECF No. 2 at 7, 11.)  Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and assesses a partial initial filing fee of $31.41, but defers its collection because Plaintiff's trust account statements show he currently "has no means to pay it." *Bruce*, 577 U.S. 84–85.  Instead, the Court **DIRECTS** the Secretary of the CDCR to place a $350 encumbrance on Plaintiff's trust account and to forward installment payments to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2) until the entire fee required by 28 U.S.C. § 1914 is paid.  *See* 28 U.S.C. § 1915(b)(1).

## II. SCREENING

### A. Standard of Review

Because Plaintiff is a prisoner seeking damages from a governmental entity or actor and is proceeding IFP, his Complaint requires a preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).  Under these statutes, the Court must sua sponte dismiss a

prisoner's IFP complaint, or any portion found frivolous, malicious, failing to state a claim, or seeking damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. A complaint fails to state a claim if it lacks a "cognizable legal theory" or "sufficient facts … to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Factual Allegations

Plaintiff's one-page Complaint is not a model of clarity, but a liberal construction indicates that on October 8, 2022, Defendant Correctional Officers Gomez and Chadry approved and moved Plaintiff to Cell #150 in the 12 Block of RJD's "C" Yard because he had a cast on his thumb due to injuries he sustained during an October 6, 2022 fight and needed a lower bunk accommodation. (*See* Compl. at 2, 3.) Plaintiff states that "before a[n] inmate is perm[a]nently housed," something called "Exhibit B" protocol must be performed, but that "period point blank … did not occur." (*Id.* at 3.)

Several weeks later, on or about October 27, 2022, Plaintiff claims he was placed in Administrative Segregation ("Ad-Seg") after Defendant Investigative Services Unit ("ISU") Officer Wingo searched his cell, indicated a "kite" had been dropped,[2] and discovered weapons hidden inside one of its walls. (*Id.*) As a result, Plaintiff appears to have been charged with possession of contraband and at some later time was transferred to Tehachapi State Prison, a "180 level [IV]" facility. (*Id.*) Plaintiff alleges he asked RJD's Associate Warden Steadman to help, "but he never did." (*Id.*) At some unspecified time after the transfer, Plaintiff alleges he was "stabbed multiple times" by an unidentified assailant. (*Id.*)

Based on these facts, Plaintiff contends Defendants Gomez, Chadry, Wingo, and Steadman[3] all violated his rights to due process and to be free from cruel and unusual

---

[2] "Dropping kites" is prison slang for "snitching" or providing confidential information to prison staff. *See Cordero v. Guzman*, 2015 WL 9319489, at *3 (E.D. Cal. Dec. 23, 2015), *report and recommendation adopted*, 2016 WL 1244670 (E.D. Cal. Mar. 30, 2016); *Bryant v. Armstrong*, 2012 WL 7680324, at *14 (S.D. Cal. Aug. 3, 2012*), report and recommendation adopted*, 2013 WL 941521 (S.D. Cal. Mar. 11, 2013).

[3] Plaintiff also names a Defendant Espeno in the caption of his Complaint, *see* Compl. at 1, but he includes no further facts explaining Espeno's role or actions with respect to the October 27, 2022 cell search. Rule 10 of the Federal Rules of Civil Procedure requires that the caption of a Complaint "name all the parties." Fed. R. Civ. P. 10(a). However, "the question of whether a defendant is properly in a case is not resolved merely by reading the

punishment by negligently failing to perform their duties. (*Id.*)

**C.    42 U.S.C. § 1983**

As pleaded, the Court finds Plaintiff's Complaint must be dismissed sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A because it fails to state a claim upon which § 1983 relief can be granted. *Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121; *Shroyer*, 622 F.3d at 1041.

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Here, Plaintiff alleges Defendants Steadman, Wingo, Gomez, and Chadry are all prison officials employed at RJD, and in both their individual and official capacities violated his civil rights. (*See* Compl. at 2–3.) "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Therefore, in order to determine whether Plaintiff has pleaded a plausible claim for relief, the Court

---

caption of a complaint." *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983). "Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant." *Id.* In other words, "the caption of an action is only the handle to identify it and ordinarily the determination of whether or not a defendant is properly in the case hinges upon the allegations in the body of the complaint and not upon his inclusion in the caption." *Hoffman v. Halden*, 268 F.2d 280, 303–04 (9th Cir. 1959), *overruled on other grounds by* C*ohen v. Norris*, 300 F.2d 24 (9th Cir. 1962). Thus, while it remains unclear whether Plaintiff even intended to include Espeno as a party, the Court nevertheless finds the body of his pleading is "devoid of further factual enhancement" which "allows [it] to draw the reasonable inference" that Espeno may be held "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

need next determine whether the factual allegations in his Complaint are sufficient to show "each Government-official defendant, through the official's own individual actions, has violated the Constitution," and thus, may be held "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 676, 678.

### D. Individual Liability

As an initial matter, the Court finds Plaintiff's Complaint fails to state any plausible claim for relief against Associate Warden Steadman. "Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Thus, in order to state a viable section 1983 claim, Plaintiff's allegations "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)). His Complaint must include facts sufficient to plausibly show each defendant "[performed] an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which he is legally required to do that cause[d] the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

While Plaintiff identifies Steadman as RJD's Associate Warden, and claims without more that Steadman failed to "meet [] expectations" by failing to "help" him, *see* Compl. at 2, 3, he includes no further factual content to show how Steadman's acts or omissions violated the Constitution. *Leer*, 844 F.2d at 633. "[V]icarious liability is inapplicable to . . . § 1983 suits, [therefore] Plaintiff must plead that each Governmental-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1988).

Supervisory officials, like the Associate Warden, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."

*Iqbal*, 556 U.S. at 676. Instead, "[a] supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

Plaintiff's Complaint fails to allege both that RJD's Associate Warden was personally involved in either his October 8, 2022 cell move or the subsequent search which form the basis of his constitutional claims. *Iqbal*, 556 U.S. at 678. Therefore, his claims against Steadman must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison,* 668 F.3d at 1112*; Wilhelm,* 680 F.3d at 1121.

### E.  Due Process

Second, to the extent Plaintiff claims Defendants Gomez, Chadry, and Wingo violated his right to due process by "negligently" approving his cell move, moving him into the cell, or "fail[ing] to perform [their] duty" by searching it without following "proper Exhibit B cell and room inspection" procedures,[4] placing him in administrative segregation after weapons were discovered, or subsequently transferring him to another prison, *see* Compl. at 2, 3, he fails to state a claim upon which § 1983 relief can be granted. *Watison*,

---

[4] While Plaintiff does not explicitly invoke the Fourth Amendment with respect to Defendant Wingo's cell search, he suggests it was improper based on confidential evidence contained in a kite. (*See* Compl. at 3.) However, to the extent Plaintiff is challenging the validity of the search, he fails to state a Fourth Amendment claim because he has no reasonable expectation of privacy in his cell. *See Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). Prison officials may conduct "wholly random" searches for contraband; officers need not have reasonable suspicion. *See id.* at 528–29; *see also Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.") (citing *Hudson*, 468 U.S. at 527–28).

668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

While Plaintiff does not explain, the Court liberally construes his pleading and presumes for purposes of screening that "Exhibit B" protocols are the search procedures employed by prison staff to ensure a cell contains no contraband. *See, e.g., Burton v. Cano*, 2018 WL 2970803, at *3 (E.D. Cal. June 11, 2018), *report and recommendation adopted*, 2018 WL 9866491 (E.D. Cal. Sept. 21, 2018) (referring to an "Exhibit B cell inspection sheet"); *Walton v. Adams*, 2009 WL 735212, at *2 (E.D. Cal. Mar. 19, 2009) (referring to "an Exhibit B" as a "record of cell search").

Section 3287 of Title 15 of the California Code of Regulations provides:

> Insofar as possible, a cell, room, or dormitory bed area and locker will be thoroughly inspected immediately upon its vacancy and again, if there is a significant time lapse, before another incarcerated person is assigned to the same cell, room, or dormitory bed and locker. Such inspections are required and must be recorded for restricted housing unit and isolation cells. The purpose of such inspections is to fix responsibility or the absence of responsibility for security and safety hazards and serious contraband found in the cell, room, or dormitory area.

Cal. Code Regs., tit. 15 § 3287(a); *see also* Cal. Dep. Corr. & Rehab. Op. Man. ("DOM") § 52050.16 (2024) ("Insofar as possible, a cell, room, dorm, or living area and locker shall be searched immediately upon its vacancy and again, if there is a significant time lapse, before it is reassigned. Such inspections are required and shall be recorded for segregation, Disciplinary Detention, and SHU cells.").

As pleaded, Plaintiff seeks to hold Defendant Gomez, Chadry, and Wingo liable for "fail[ing] to perform [their] duti[es] with respect to "Exhibit B" internal institutional search protocols. (*See* Compl. at 3.) But "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citations omitted); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) (citing *Smith v. City of Fontana*, 818 F.2d 1411, 1418, n.9 (9th Cir. 1987) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official[.]") (citation and internal quotation marks omitted)).

In addition, a purported failure to adhere to certain prison regulations and guidelines does not, without more, establish the violation a federal constitutional right. *See Cousins v. Lockyer,* 568 F.3d 1063, 1070 (9th Cir. 2009) ("[S]tate departmental regulations do not establish a federal constitutional violation."); *Case v. Kitsap County Sheriff's Dep't,* 249 F.3d 921, 930 (9th Cir. 2001) (citations omitted)); *see also McDonald v. Jones*, 2024 WL 2786789, at *2 n.1 (E.D. Cal. May 30, 2024) (dismissing claims that officials acted in "dereliction of [their] duties" as set forth in unidentified prison policies); *Pettus v. Serrano*, 2022 WL 3574417, at *8 (C.D. Cal. July 1, 2022) (dismissing prisoner's claims that "prison[] policies and procedures regarding 'body and cell searches' were not followed" for failing to state a due process claim pursuant to 28 U.S.C. § 1915A). In short, even if Gomez, Chadry, and Wingo *did* fail to employ appropriate "Exhibit B" cell search protocols, the violation of Cal. Code Regs., tit. 15 § 3287(a) or DOM § 52050.16 by itself does not violate the Fourteenth Amendment.

Specifically, the Fourteenth Amendment ensures that the State shall not "deprive any person of life, liberty or property, without due process of the law." U.S. Const. amend. XIV, § 1. "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). But "lawfully incarcerated persons retain only a narrow range of protected liberty interests" under the Due Process Clause. *Chappell v. Mandeville*, 706 F.3d 1052, 1062–63 (9th Cir. 2013) (internal quotation marks and citation omitted). Thus, while prison regulations like Cal. Code Regs., tit. 15 § 3287(a) and DOM § 52050.16 may under certain circumstances create a liberty interest protected by the Fourteenth Amendment, "these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Chappell*, 706 F.3d at 1064 ("[T]o find a violation of a state-created liberty interest[,] the hardship imposed on the prisoner must be 'atypical and significant . . . in relation to the ordinary incidents of

prison life.'") (quoting *Sandin*, 515 U.S. at 484). When conducting the *Sandin* inquiry, courts look to Eighth Amendment standards, the prisoners' conditions of confinement, the duration of the sanction, and whether the sanction imposed affected the length of sentence. *See Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).

Here, Plaintiff seeks to hold Defendants Gomez, Chadry and Wingo liable for violating his due process rights, but he fails to allege facts sufficient to show how their alleged failure to properly follow "Exhibit B" cell search protocols imposed an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. At most, Plaintiff claims he was "placed in Ad-Seg" for an unspecified length of time after a cell search revealed weapons hidden inside his cell wall, and that he was subsequently transferred to a "180 level IV" institution. (*See* Compl. at 3.) But administrative segregation and transfer to a level IV prison do not by themselves rise to the level of an "atypical and significant hardship." *See Sandin*, 515 U.S. at 486 (finding 30 days of disciplinary segregation did not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system. […] That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to [an] institution with the more severe rules."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (classification of inmate at a "level IV" prison rather than at a "level III" prison did not present an "atypical and significant hardship.") Instead, Plaintiff must allege facts sufficient to show a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. *Sandin*, 515 U.S. at 485–86; *Myron*, 476 F.3d at 718; *see also Fiorito v. Entzel*, 2019 WL 1446403, at *5 (C.D. Cal. Mar. 27, 2019) ("Transfer to a prison with more violence and lockdowns [ ] does not amount to an atypical and significant hardship.") (citations omitted), *report and recommendation adopted*, 2019 WL 1438067 (C.D. Cal. Mar. 29, 2019), *aff'd*,

845 F. App'x 706 (9th Cir. 2021); *Hubbard v. Warden of Wasco State Prison*, 2015 WL 2345457, at *4 (E.D. Cal. May 14, 2015) ("That a higher security yard is more restrictive or houses more violent inmates is not sufficient, in and of itself, to demonstrate that it is a condition which imposes atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life.").

As pleaded, Plaintiff's Complaint fails to define the duration of his placement in Ad-Seg, allege how the discovery of weapons in his cell affected the length of his sentence, or describe how any restrictive conditions imposed after the cell search "work[ed] a major disruption in his environment." *Sandin*, 515 U.S. at 486; *Brown*, 751 F.3d at 987. Therefore, to the extent Plaintiff alleges a violation of due process, his claims against Defendants Gomez, Chadry and Wingo must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### F.  Cruel and Unusual Punishment

Finally, Plaintiff claims Defendant Gomez, Chadry, and Wingo's acts or omissions amounted to "cruel & unusual punishment." (*See* Compl. at 3.)

To state a cruel and unusual punishment claim, Plaintiff must allege facts sufficient to satisfy two requirements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Iqbal*, 556 U.S. at 678. First, he must allege his deprivation was "objectively [and] 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Peralta v. Dillard*, 744 F.3d 1076, 1091 (9th Cir. 2014). Prison conditions are not objectively serious unless they amount to "unquestioned and serious deprivations of basic human needs," or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 298–300.

Second, Plaintiff's Complaint "must contain sufficient factual matter" to demonstrate that each Defendant acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Iqbal*, 556 U.S. at 678; *Wilson*, 501 U.S. at 303; *Peralta*, 744 F.3d at 1091. A prison official acts with deliberate indifference if he "knows of and

disregards an excessive risk to the prisoner's health and safety." *Farmer*, 511 U.S. at 837. In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to the prisoner], and [the prison official] must also draw the inference." *Id.*

Here, Plaintiff broadly invokes the Eighth Amendment's proscription of "cruel and unusual punishment" with respect to Defendant Gomez, Chadry, and Wingo's purported failures to properly inspect and search his cell prior to his placement there. (*See* Compl. at 3.) But he fails to allege how lapses in cell search protocol resulted in the deprivation of an "unquestioned and serious … basic human need[]," or of any of "life's necessities." *Rhodes*, 452 U.S. at 347. Plaintiff further fails to plausibly allege any of these Defendants had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to" his constitutional rights, either when they cleared him for placement in the cell on October 8, 2022, or when they later discovered weapons hidden in its walls. *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03); *Iqbal*, 556 U.S. at 678. And while Plaintiff alleges he was subsequently stabbed by another inmate at Tehachapi State Prison, *see* Compl. at 3, no where in his Complaint does he allege any of the RJD officials named as parties to this case were responsible for his transfer to Tehachapi, or actually aware that he would face a "substantial risk of serious harm" at that facility. *Farmer*, 511 U.S. at 837.

Therefore, to the extent Plaintiff contends Defendants Gomez, Chadry, and Wingo violated his Eighth Amendment rights, his claims must also be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### III. CONCLUSION

Accordingly, for all the reasons discussed, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2) **ORDERS** the Secretary of the CDCR, or his designee, to place a $350 encumbrance on Plaintiff's trust account and to forward installment payments to the Clerk

of the Court pursuant to 28 U.S.C. § 1915(b)(2) until the entire filing fee required by 28 U.S.C. § 1914 to commence this civil action is paid. *See* 28 U.S.C. § 1915(b)(1).

   3)   **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

   4)   **DISMISSES** Plaintiff's Complaint in its entirety for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

   5)   **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. Any Defendant not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa* Cnty., 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

   If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

   **IT IS SO ORDERED.**

Dated: February 24, 2025

_____
Hon. John A. Houston
United States District Judge